**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANTONIO FERRARA | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION |
| | : | |
| | : | NO. 18-CV-05157 |
| v. | : | |
| | : | |
| DELAWARE COUNTY, et al. | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

**Joyner, J.**

Before the Court are Plaintiff's Complaint (Compl., Doc.
No. 1), Defendants' Motion to Dismiss Plaintiff's Complaint Or
In the Alternative, For a More Definite Statement (Doc. No. 5),
and Plaintiff's response thereto (Doc. No. 6).  For the reasons
outlined herein, the Court hereby GRANTS Defendants' Motion to
Dismiss with respect to Count IV and GRANTS IN PART Defendants'
Motion for a More Definite Statement with respect to Count II.
An appropriate Order will follow.

## I.    BACKGROUND

In November 2016, Plaintiff Antonio Ferrara ("Ferrara") was
a pretrial detainee at the George W. Hill Correctional Facility
("George W. Hill").  Compl. ¶¶1, 3, 4, 7.  George W. Hill is a
county detention facility controlled, operated and managed by
Defendants Delaware County and CEC.  Id.  In his Complaint,

1

Ferrara claims that following an authorized visit from his male partner, Defendant Officer Moore ("Moore") conducted a strip search on him. Id. at ¶15. During the search, Moore allegedly made derogatory statements regarding Ferrara's sexual orientation. Id. at ¶¶18, 22. Ferrara next alleges that without provocation, Moore struck him in the face multiple times, causing extensive facial injuries and requiring immediate and future medical attention. Id. at ¶¶19, 23, 24, 25. Ferrara further alleges that Defendants Fakolee, Motley, John Doe I, John Doe II, and John Doe III ("Correctional Officer Defendants") were all present during the assault, yet failed to intervene and even encouraged Moore's conduct. Id. at ¶20. Following the attack, Correctional Officer Defendants allegedly conspired to conceal the attack and prevent Plaintiff Ferrara from exercising any legal remedy. Id. at ¶¶34, 35.

In November 2018, Ferrara filed his Complaint against Defendants Delaware County, Community Education Centers, Inc., Warden David Byrne, Correctional Officer G. Moore, Correctional Officer Fakolee, and Correctional Officer Motley. Pursuant to 42 U.S.C. §1983, Ferrara alleges that Moore used excessive force in violation of his constitutional rights (Count I). Id. at ¶¶28, 29. Plaintiff also asserts state law claims of assault, battery, intentional infliction of emotional distress, and discrimination against Moore (Count II). Id. at ¶¶32, 33.

Moreover, Ferrara alleges that Correctional Officer Defendants violated his constitutional rights by failing to intervene (Count III), id. at ¶¶37-44, and conspiring to conceal the assault (Count II).  Id. at ¶¶34, 35.  Finally, Ferrara alleges that Delaware County, CEC, and Defendant Warden Byrne ("Byrne"), in their official capacities, are liable for Moore and Correctional Officer Defendants' constitutional violations (Count IV).  Id. at ¶¶45-51.  Likewise, Plaintiff alleges that Delaware County and CEC are liable for all state law claims, under a respondeat superior theory of liability.  Id. at ¶¶52-56.  Ferrara seeks both compensatory and punitive damages for all five counts.  Id. at ¶¶30, 36, 43, 44, 51.

Defendants make several arguments in their Motion to Dismiss.  (Defs. Mot., Doc. No. 5).  In large part, Defendants argue that Plaintiff has not alleged sufficient facts to meet the pleading standards for each substantive cause of action.  Defs. Mot. at 7, 9, 11, 12, 13.  Alternatively, Defendants argue that this Court should order Plaintiff to file a more definite statement, under Fed. R. Civ. P. Rule 12(e), because Defendants are left to guess what causes of action Ferrara pursues.  Id. at 13-14.  Finally, Defendants move to strike punitive damages from Plaintiff's constitutional claims, on the ground that Plaintiff has failed to legitimately allege "evil motive or intent."  Id. at 14-15.

This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §1331.  It has supplemental jurisdiction under 28 U.S.C. §1367 for the state law claims.

## II.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering such a motion, a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. DISCUSSION

### A. Count I: Excessive Force Claim Under 42 U.S.C. §1983

Plaintiff Ferrara alleges that Defendant Moore unlawfully used excessive force by striking him multiple times in the face while he subjected Plaintiff to a strip search. Compl. ¶¶19, 21-23. Defendant Moore argues that Plaintiff has failed to plead sufficient facts regarding the alleged assault. Def. Mot. at 9.

Pursuant to 42 U.S.C. §1983[1], we analyze an excessive force claim by a pretrial detainee under the Fourteenth Amendment guarantee of due process. Fuentes v. Wagner, 206 F.3d 335, 344 (3d Cir. 2000). "Under the Fourteenth Amendment, a pretrial detainee is entitled 'at a minimum, [to] no less protection' than a sentenced inmate is entitled to under the Eighth Amendment."[2] Id. (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 668 (3d Cir. 1988)). Under this standard, an excessive force claim "must allege a subjective and objective element" of the actor's conduct. Hudson, 503 U.S. at 8.

---

[1] In order to state a claim under 42 U.S.C. §1983, a plaintiff must plead that an individual acting under the color of state law deprived him or her of a constitutional right. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

[2] In Fuentes, the Third Circuit held "that the Eighth Amendment cruel and unusual punishments standards found in Whitley v. Albers, 475 U.S. 312 (1986), and Hudson v. McMillian, 503 U.S. 1 (1992), apply to a pretrial detainee's excessive force claim arising in the context of a prison disturbance." 206 F.3d at 347. (citations omitted).

The Third Circuit has clarified that "the pivotal inquiry in reviewing an inmate's §1983 excessive force claim is 'whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Smith v. Mensinger, 293 F.3d 641, 649 (3d Cir. 2002) (quoting Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)); see also Ricks v. Shover, 891 F.3d 468 (3d Cir. 2018).

The Court considers five factors when analyzing an officer's subjective state-of-mind: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of the forceful response." Smith, 293 F.3d at 649 (quoting Brooks, 204 F.3d at 106). Additionally, "[t]he objective component of the excessive force inquiry is met when the inmate's injury was more than de minimis." Ricks, 891 F.3d at 480 (quoting Fuentes, 206 F.3d at 345) (holding allegations that plaintiff detainee was "slammed" into a wall with enough force to cause an injury are sufficient to state a claim).

Here, Plaintiff has alleged sufficient facts to state an excessive force claim against Defendant Moore.  Plaintiff

asserts that he posed no threat and complied with Defendant
Moore during the strip-search.  Yet Plaintiff ultimately
suffered extensive injuries caused by Defendant Moore allegedly
striking him multiple times in the face.  Compl. ¶¶15-27.  From
Plaintiff's allegation that he suffered "permanent physical
disfigurement," we can infer that Defendant Moore had the
requisite subjective state-of-mind to use force and that he used
an objectively excessive amount of force.  See Ricks, 891 F.3d
at 480.  Discovery will bring to light whether Plaintiff can
establish additional facts relevant to whether Defendant Moore
used excessive force under §1983 such as need for force, threat
to safety, and any resistance offered by the Plaintiff.  Yet we
find that both the subjective and objective components of an
excessive force analysis that both parties direct this Court to
consider have been sufficiently plead.  Pl. Opp. at 10-11; Def.
Mot. at 9.  Accordingly, Defendants' motion to dismiss Count I
against Defendant Moore is denied.

**B. Count II: Supplemental Claims**

Plaintiff Ferrara also raises supplemental state and
federal claims against Defendant Moore, and Defendants Fakolee,
Motley, Doe I, Doe II, and Doe III, collectively "Correctional
Officer Defendants."  Compl. ¶¶28, 29, 32, 33.  Defendants move
to dismiss each cause of action in Count II, arguing
insufficient factual allegations.  Def. Mot. at 12-13.

Alternatively, Defendants argue the Court should grant their Rule 12(e) motion by requiring Plaintiff to file a more definite statement in compliance with Fed. R. Civ. P. Rule 8(a).  Id. at 13-14.

### 1. Assault, Battery, and Intentional Infliction of Emotional Distress Claims against Defendant Moore

Count II asserts pendent Pennsylvania state law causes of action for assault, battery, and intentional infliction of emotional distress ("IIED") against Defendant Moore.  Compl. ¶32.  Defendant Moore contends that Count II should be dismissed because this claim lacks both clarity and sufficient facts.  Def. Mot. at 12.

Under Pennsylvania law, "an assault occurs when an actor intends to cause an imminent apprehension of a harmful or offensive bodily contact," and actually causes imminent apprehension.  Sides v. Cleland, 648 A.2d 793, 796 (Pa. Super. 1994) (citing Restatement (Second) of Torts § 21).  By contrast, battery is the actual infliction of such injury, regardless of how minor.  See, e.g., Cucinotti v. Ortmann, 159 A.2d 216, 217-18 (Pa. 1960); Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).

Additionally, to state a claim of IIED a plaintiff "must, at least, demonstrate intentional outrageous or extreme conduct by the defendant which causes severe emotional distress to the

plaintiff." Reeves v. Middletown Athletic Association, 866 A.2d 1115, 1122 (Pa. Super. 2004) (citing Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998)). The alleged conduct "must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Hoy, 720 A.2d at 754 (quoting Buczek v. First Nat'l Bank of Mifflintown, 531 A.2d 1122, 1125 (Pa. Super. Ct. 1987)).

The Eastern District of Pennsylvania has consistently held that a determination of "extreme and outrageous" behavior is a preliminary matter for the court to decide. Ruder v. Pequea Valley Sch. Dist., 790 F. Supp. 2d 377, 397 (E.D. Pa. 2011) ("It is for the court to determine in the first instance whether the element of outrageousness has been met"); see e.g., Mansmann v. Tuman, 970 F. Supp. 389, 403 (E.D. Pa. 1997) (same); NTP Marble, Inc. v. AAA Hellenic Marble, Inc., 799 F. Supp. 2d 446, 454 (E.D. Pa. 2011). While medical evidence of the resulting physical harm bolsters a plaintiff's claim, "most federal district courts in this circuit have declined to require specific allegations of medical evidence at the motion to dismiss stage." Kornegey v. City of Phila., 299 F. Supp. 3d 675, 684 (E.D. Pa. 2018). See also Silver v. Mendel, 894 F.2d 598, 607, n.19 (3d Cir. 1990).

Plaintiff asserts that without provocation, he was struck in the face multiple times, causing extreme pain and injuries that required immediate medical attention. Compl. ¶¶19, 23-24. From these allegations alone, the Court can infer that Defendant Moore both intended to cause imminent fear before making contact with the Plaintiff, and actually did make contact with the Plaintiff. Accordingly, Plaintiff's complaint alleges sufficient facts to state a claim for assault and battery.

Likewise, Defendant Moore's conduct could be considered so "extreme and outrageous" as to go beyond all possible bounds of decency in a civilized society. The concurrence of an unprovoked assault and making sexual epithets while Plaintiff was subjected to the increased vulnerability of a strip search, id. at ¶¶15, 18-19, clearly encompass conduct that could be considered "utterly intolerable in a civilized society." Hoy, 720 A.2d at 754. Although Plaintiff's assertion that he suffered "anxiety, fear and mental harm," Compl. ¶24, lacks supporting medical evidence, this assertion alone is sufficient to survive the motion to dismiss stage. Accordingly, Defendants' motion to dismiss Count II with respect to the IIED claim against Defendant Moore is denied.

**2. Discrimination Claim Against Defendant Moore**

Additionally, Plaintiff alleges Defendant Moore's conduct was motivated by Plaintiff's sexual orientation. Compl. ¶33.

Defendants argue this claim should be dismissed because it lacks sufficient factual support, or, in the alternative, a 12(e) motion should be ordered because it has not provided them with enough facts to adequately file a response. Def. Mot. at 12, 14.

A pleading must be sufficient enough to enable the court to make out the potential viable legal theories upon which the complaint is based. 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1376, at 577 (3d ed. 2004). Under Rule 12(e), a defendant may move for a more definite statement "[i]f a pleading . . . is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed. R. Civ. P. 12(e). "The basis for granting such a motion is unintelligibility, not lack of detail." Sun Co., Inc. (R&M) v. Badger Design & Constructors, Inc., 939 F. Supp. 365, 368 (E.D. Pa. 1996) (quoting Wood & Locker, Inc. v. Doran and Assocs., 708 F. Supp. 684, 691 (W.D. Pa. 1989)). A Rule 12(e) "motion shall point out the defects complained of and the details desired." Fed. R. Civ. P. 12(e).

Defendant Moore contends that because the motivating cause of action in Count II is puzzling and ambiguous, he cannot adequately file an appropriate response. Defs. Mot. at 12, 14. We agree. Specifically, determining whether Plaintiff brings a discrimination or due process claim is left to a guessing game. Because Defendants, like the Court, cannot interpret what cause

of action Plaintiff is pursuing, granting a Rule 12(e) motion
for a more definite statement is appropriate.  Accordingly,
Plaintiff must file an amended complaint, consistent with Fed.
R. Civ. P. Rule 8(a), specifying the causes of actions it
pursues and any supporting factual allegations.

### 3. Conspiracy Claim against Correctional Officer Defendants

Finally, Count II alleges Correctional Officer Defendants
conspired to deny Plaintiff access to the courts.  Compl. ¶34.
Correctional Officer Defendants argue that Plaintiff fails to
characterize whether this cause of action is a constitutional or
state law conspiracy.  Defs. Mot. at 12.  Defendants move to
dismiss the claim, or alternatively, move for a Rule 12(e)
motion for a more definitive statement.  Id. at 12, 14.  We
agree with the later of Defendants' arguments.

A conspiracy claim under 42 U.S.C §1983 requires that the
object of the conspiracy be an underlying civil rights claim.
Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254
(3d Cir. 1999); see also Adickes v. S.H. Kress & Co., 398 U.S.
144, 150 (1970) (holding that to demonstrate a §1983 conspiracy,
a plaintiff must show two or more conspirators agreed to deprive
him of a constitutional right). By contrast, when pleading a
state law conspiracy, the "[p]laintiff must show that two or
more persons combined or agreed with intent to do an unlawful
act or to do an otherwise lawful act by unlawful means" with the

intent to injure.  Skipworth by Williams v. Lead Indus. Ass'n,
Inc., 690 A.2d 169, 174 (Pa. 1997).

From the facts alleged, Plaintiff fails to address whether
an agreement was made.  Even if an agreement can be inferred,
the Correctional Officer Defendants are left to guess whether
the alleged conspiracy involves a constitutional standard, state
law standard, or both.  For these reasons, Defendants' 12(e)
motion for a more definite statement is granted.  Plaintiff must
amend Count II with respect to the conspiracy cause of action.

### C. Count III: Bystander Liability/Failure to Intervene

Plaintiff alleges that Defendants Fakolee, Motley, Doe I,
Doe II, and Doe III ("Correctional Officer Defendants") were all
present at the time Defendant Moore struck Plaintiff.  Compl.
¶¶16, 38.  Plaintiff asserts that during the assault,
Correctional Officer Defendants stood idle, failed to intervene,
and even encouraged Defendant Moore's conduct.  Id. at ¶¶38-41.
Defendants argue that this claim should be dismissed because
Plaintiff has failed to allege that Defendants knew of and
unreasonably disregarded any risk of harm to Plaintiff.  Defs.
Mot. at 11.

As a pretrial detainee, Plaintiff is not subject to the
Eighth Amendment's protections; rather, the Fourteenth
Amendment's Due Process Clause applies.  Thomas v. Cumberland
County, 749 F.3d 217, n.4 (3d Cir. 2014) (citing A.M. ex rel.

J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 579
(3d Cir. 2004)).  However, the Third Circuit "has applied the
same standard to a failure-to-protect claim under the Fourteenth
Amendment as under the Eighth Amendment."  (quoting Thomas, 749
F.3d 217, n.4).  In Smith v. Mensinger, the Third Circuit held
"that a corrections officer's failure to intervene in a beating
can be the basis of liability for an Eighth Amendment violation
under §1983 if the corrections officer had a reasonable
opportunity to intervene and simply refused to do so."  293 F.3d
at 650.

     The Third Circuit has made clear that "merely alleging that
a defendant knew of a risk to the plaintiff is insufficient to
support an inference of deliberate indifference absent any
factual allegations supporting that conclusion, and thus cannot
alone establish facial plausibility."  E.D. v. Sharkey, C.A. No.
16-2750, 2017 U.S. Dist. LEXIS 74088, at *17 (E.D. Pa. May 16,
2017).  See, e.g., Bistrian v. Levi, 696 F.3d 352, 369 (3d Cir.
2012); Buoniconti v. City of Phila., 148 F. Supp. 3d 425, 435
(E.D. Pa. 2015).  However, alleging that a correctional officer
acted with deliberate indifference – that he knew or was aware
of the excessive risk to an inmate's safety - is sufficient to
plead a failure-to-intervene claim.  Burton v. Kindle, 401 F.
Appx. 635, 637-638 (3d Cir. 2010).  Correctional officers cannot
"escape liability by turning either a blind eye or deaf ear to

the illegal conduct of their colleagues." <u>Smith</u>, 293 F.3d at 652.

We find that Plaintiff has alleged sufficient facts to state a claim against Correctional Officer Defendants for failing to intervene during Defendant Moore's assault. Plaintiff alleges that Correctional Officer Defendants were present at the time of the assault, yet stood idly by and failed to intervene at any point during the assault. Compl. ¶¶16, 38-40. Defendants' argument that they did not know of an impending attack because Defendant Moore had acted suddenly and without being provoked does not change the allegation that they did not attempt to intervene. Defs. Mot. at 10. By witnessing the escalation of events, Correctional Officer Defendants likely knew or were aware of the excessive risk to Plaintiff's safety. Further, the fact that Correctional Officer Defendants had time to encourage Defendant Moore's conduct supports the inference that a window of opportunity to intervene existed. Compl. ¶38. In light of the facts alleged, Correctional Officer Defendants were aware of a risk, had reasonable opportunity to intervene, yet simply refused to do so. Defendants' Motion to Dismiss Count III is denied.

**D. Count IV: Municipal and Superior Liability Claims against Delaware County, CEC, Byrne under 42 U.S.C. §1983**

In Count IV, Plaintiff brings suit against Defendants Delaware County, CEC, and Byrne under 42 U.S.C. §1983. Plaintiff alleges that Defendants developed and maintained policies and/or customs that failed to provide adequate supervision and training to its correctional officers. Compl. ¶¶45-51. As a result of Defendants' 'deliberate indifference,' Plaintiff's rights protected by the First, Fourth, Eighth and Fourteenth Amendments were violated. Id. at ¶¶5-51, 26. Defendants move to dismiss Count IV of Plaintiff's Complaint, contending that Plaintiff should not be permitted to advance a municipal liability claim absent specific factual allegations of policies or customs. Defs. Mot. at 3-7.

**1. Legal Framework – Monell and Failure-to-Train**

There is no respondeat superior theory of municipal liability, so a city, municipality, or private entity "may not be held vicariously liable under §1983 for the actions of its agents." Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). "Rather, a municipality may be held liable only if its policy or custom is the 'moving force' behind a constitutional violation." Sanford, 456 F.3d at 314; see also Collins v. City of Harker Heights, 503 U.S. 115, 122 (1992) (stating that a municipality is liable only when the municipality itself is the "wrongdoer").

To successfully bring this claim, "a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." Buoniconti, 148 F.Supp.3d at 436 (citing Monell, 436 U.S. at 692-694).

A plaintiff must first show that an official with the power to make policy "is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citing Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "To determine whether an official is a policymaker, the court must ask whether, as a matter of state law, the official is responsible for making policy in a particular area of municipal business in question. Then, the court must ask whether the official's authority to make the policy is 'final and unreviewable.'" Buoniconti, 148 F.Supp.3d at 437 (citing Hill v. Borough of Kutztown, 455 F.3d 225, 245-46 (3d Cir. 2006)) (internal citation omitted).

Additionally, a plaintiff must allege sufficient facts indicating a municipal policy or custom exists. A "policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an

17

official proclamation or policy." <u>Andrews</u>, 895 F.2d at 1480

(quoting <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 481

(1986)).  A custom is demonstrated when, "though not authorized

by law, such practices of state officials [are] so permanent and

well settled that they operate as law." <u>Jimenez v. All AM</u>

<u>Rathskellar</u>, 503 F.3d 247, 250 (3d Cir. 2007) (quoting <u>Monell</u>,

436 U.S. at 690) (internal quotation omitted).  While a

plaintiff's alleged facts are entitled to the presumption of

truth, "'vague assertions' of a policy or custom are not

sufficient to impose liability." <u>Groman v. Township of</u>

<u>Manalapan</u>, 47 F.3d 628, 637 (3d Cir. 1995).

As we recognized in <u>Buoniconti</u>, there are three situations

where a policy or custom may render a municipality liable under

§1983:

> "First, and most straightforwardly, a policy or custom
> may be inferred from the acts or omissions of an officer
> employee where "the appropriate officer or entity promulgates
> a generally applicable statement of policy and the subsequent
> act complained of is simply an implementation of that policy."
> <u>Natale v. Camden Cty. Corr. Facility</u>, 318 F.3d 575, 584 (3d
> Cir. 2003) (quoting <u>Bd. Of Cty. Comm'rs of Bryan Cty., Okla.</u>
> <u>v. Brown</u>, 520 U.S. 397, 417(1997)).  Second, a policy or
> custom may be inferred where "no rule has been announced as
> policy but federal law has been violated by an act of the
> policymaker itself." <u>Id.</u>  Third, a policy or custom may be
> inferred where "the policymaker has failed to act
> affirmatively at all," but "the need to take some action to
> control the agents of the government is so obvious, and the
> inadequacy of existing practice so likely to result in the
> violation of constitutional rights, that the policymaker can
> reasonably be said to have been deliberately indifferent to
> the need." <u>Id.</u> (citations omitted).

148 F.Supp.3d at 438.  Here, Plaintiff's claim falls within the
scope of the third situation.  Specifically, Plaintiff alleges
that Delaware County, CEC, and Byrne failed to supervise, train,
retrain, or discipline against the following: (1) recklessness
and deliberate indifference in adequately discouraging
constitutional violations on the part of its officers, Compl.
¶¶46-47; and, (2) a code of silence of officers refusing to
intervene or provide information.  Id. at ¶48.

Analyzing a municipal liability claim alleging a failure to
train involves "rigorous standards of culpability and causation
. . . to ensure that the municipality is not held liable solely
for the actions of its employee." Bryan Cty., 520 U.S. at 405.
"In limited circumstances, a local government's decision not to
train certain employees about their legal duty to avoid
violating citizens' rights may rise to the level of an official
government policy for the purposes of §1983." Connick v.
Thompson, 563 U.S. 51 (2011).  However, such a failure "must
amount to *deliberate indifference* to the rights of persons with
whom the untrained employees come into contact." Connick, 563
U.S. at 61 (emphasis added) (quoting Canton, 489 U.S. at 388).
Moreover, this deliberate indifference must be the moving force
behind the alleged injury.  Id.

Policymakers' "continued adherence to an approach that they
know or should know has failed to prevent tortious conduct by

employees" establishes the 'deliberate indifference' necessary to trigger municipal liability. Connick, 563 U.S. at 62 (quoting Bryan Cty., 520 U.S. at 407). Generally, a plaintiff must show a "pattern of similar constitutional violations by untrained employees." Buoniconti, 148 F.Supp.3d at 440 (quoting Connick, 563 U.S. at 62); see also Thomas, 749 F.3d at 223 (3d Cir. 2014). However, sometimes a single incident can be characterized as deliberate indifference when the risk of injury is a "highly predictable consequence of the municipality's failure to train and supervise its officers." Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64).

"To determine whether a municipality's alleged failure to train its employees amounted to a deliberate or conscious choice, it must be shown that '(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.'" Doe v. Luzerne County, 660 F.3d 169, 179-80 (2011) (citing Carter, 181 F.3d at 357). Finally, the injury must be closely related to the constitutional violation. Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005).

**2. Plausibility of Municipal and Superior Liability Claims**

Plaintiff's claim against Defendant Byrne is based on his status as an administrative official of the George W. Hill Correctional Facility.  Compl. ¶6.  However, Plaintiff does not allege any facts that Defendant Byrne acted as a final policymaker with respect to George W. Hill or its alleged policies.  See, e.g., Buoniconti, 148 F.Supp.3d at 437; Cortlessa v. Cty. of Chester, No. 04-1039, 2006 U.S. Dist. LEXIS 34513, at *8 (E.D. Pa. May 24, 2006) ("The mere fact that Warden Masters, as part of his duties, supervised prison officers is, by itself, insufficient to confer 'policymaker' status.").  Given the absence of facts, the Court cannot draw the inference that Defendant Byrne acted as a final policymaker.

However, a supervisor may be personally liable under §1983 if the supervisor "failed to respond appropriately in the face of an awareness of a pattern of such injuries," or where the risk of constitutional injury is so obvious.  Parkell v. Markell, 622 Fed. Appx. 136, 140, (3d Cir. 2015)(quoting Sample v. Diecks, 885 F.2d 1099, 1118 (3d Cir. 1989)).  Here, Plaintiff alleges that Defendant Byrne had actual or constructive knowledge of the shortcomings in training his officers, yet failed to stop or limit such policies.  Compl. ¶50.  However, Plaintiff's bare and conclusory allegation that Defendant Byrne "knew [of officers] who had engaged in misconduct" does not

establish a pattern or account of similar constitutional violations.[3]   Id. at ¶47.  Therefore, Plaintiff has failed to allege sufficient facts to state a claim against Defendant Byrne.

Further, Plaintiff's claim against Defendants Delaware County and CEC fail for similar reasons.  Foremost, Plaintiff fails to allege that Defendants Delaware County or CEC are final policymakers with respect to George W. Hill.  Even assuming for limited purposes of this analysis that Defendants Delaware County and CEC are policymakers, Plaintiff fails to allege any facts that would establish a pattern of similar constitutional violations.  Moreover, Plaintiff's mere statement that Defendants acted with deliberate indifference, id. at ¶46, without facts, are the "[t]hreadbare recitals of the elements of a cause of action" that Iqbal repudiates.  See Iqbal, 556 U.S. at 678.

While it could be plausible that Defendants knew their employees would confront violence towards inmates, blanket and conclusory allegations that Defendants knew and tolerated those who "have engaged in misconduct," Compl. ¶47, are not enough.

_____

[3] Plaintiff's assertion that his pleading is "at least . . . if not more" specific than the pleading in Gioffre v. County of Bucks, 2009 WL 3617742 (E.D. Pa. November 2, 2009), is a misstatement of nonprecedential case law. (Pl.'s Resp. to Defs.' Mot. Dismiss, 9).  Gioffre, 2009 U.S. Dist. LEXIS 101894 at *10-11, survived Defendant's motion to dismiss because its complaint, while "lack[ing] much detail," sufficiently established a pattern of violations that proximately caused Plaintiff's alleged injuries.

Buoniconti, 148 F.Supp.3d at 443.  Likewise, considering single-incident liability, Plaintiff alleges no facts for the Court to infer that his injury was a "highly predictable consequence of the municipality's failure to train and supervise its officers." Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). "The thrust of Monell itself is that a municipality shall not be vicariously liable for the acts of its officials."[4]  Buoniconti, 148 F.Supp.3d at 443 (citing Monell, 436 U.S. at 692). Therefore, Plaintiff has failed to state a municipal liability claim against Delaware County and CEC for failing to train its correctional officers.  Defendants' motion to dismiss Count IV against all Defendants is granted in full.

### E. Count V - Respondeat Superior Liability Under State Law

Plaintiff asserts that Defendants Delaware County and CEC, acting in their capacity as employers of Correctional Officer Defendants, are liable under the doctrine of respondeat superior for state law claims set forth in Count II.  See supra Section B.  In Count II, we denied Defendant's motion to dismiss regarding assault, battery, and intentional infliction of emotional distress claims against Defendant Moore.  However, we granted Defendants' 12(e) motion for a more definite statement

---

[4]Otherwise, "'failure to train' would become a talismanic incantation producing municipal liability '[i]n virtually every instance where a person has had his or her constitutional rights violated by a city employee' - which is what Monell rejects."  Connick, 563 U.S. at 74 (Scalia, J., concurring) (quoting Canton, 489 U.S. at 392).

regarding discrimination and conspiracy claims.  <u>See supra</u>
Section B.  Consequently, we will only address Plaintiff's
respondeat superior liability claim with respect to the state-
law claims of assault, battery, and intentional infliction of
emotional distress.

42 Pa. Cons. Stat. §8541 provides, "except as otherwise
provided in the subchapter, no local agency shall be liable for
any damages on account of any injury to a person or property
caused by any act of the local agency or an employee thereof or
any other person."  As defined in 42 Pa. Cons. Stat. §8501, "a
local agency includes any government unit other than the
Commonwealth government," including a County Prison Board and
the County Board of Commissioner.  <u>Damron v. Smith</u>, 616 F. Supp.
424 (E.D. Pa. 1985).  Although 42 Pa. Cons. Stat. §8542 provides
eight stringently defined exceptions to §8541, the general rule
that a local agency will not be liable for the intentional
conduct of its employees has remained constant and unquestioned.

By definition, both Delaware County and CEC[5] are "local
agencies" within the scope of 42 Pa. Cons. Stat §8501 and §8541.
Plaintiff's alleged state-law tort claims of assault, battery,
and IIED are all intentional torts which do not fall within any
of the eight enumerated exceptions of §8542.  Therefore,

---

[5] Both Delaware County and CEC act within their capacities as operators and
employers to correctional officers at George W. Hill.  Compl. ¶2.

24

Defendants Delaware County and CEC are immune from suit under §8541 for the alleged intentional torts by Correctional Officer Defendants.  See Rudolph v. Clifton Heights Police Dep't, No. 07-CV-01570, 2008 U.S. Dist. LEXIS 52019 (E.D. Pa. July 7, 2008.)  Accordingly, Defendants' motion to dismiss Count V is granted with respect to respondeat liability theory for assault, battery and IIED claims only.

### F. Motion to Strike Punitive Damages

In all counts, Plaintiff seeks punitive damages, alleging the conduct of all individual Defendants was intentional, malicious and deliberately indifferent.  Compl. ¶¶30, 36, 43, 44, 51.  Defendants move to strike punitive damages from all constitutional claims, arguing there was no "evil intent or motive".  Defs. Mot. at 14-15.  Because Count IV[6] was dismissed and Defendants' only move to strike punitive damages from constitutional claims, the Court will only address Count I and Count III.

Punitive damages may be awarded under 42 U.S.C. §1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Coleman v. Kaye,

---

[6] Even if Defendants' motion to dismiss Count IV was denied, punitive damages would be unattainable because a  municipality is immune from punitive damages under 42 U.S.C. §1983.  City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

87 F.3d 1491, 1497 (3d Cir. 1996) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)).  In light of the alleged facts, this Court cannot strike punitive damages from Count I against Defendant Moore.  Plaintiff asserts that Defendant Moore made sexual epithets, then struck Plaintiff multiple times without provocation.  Compl. ¶¶18-19.  When a correctional officer strikes a compliant detainee multiple times, it is reasonable to infer that he is consciously aware of his conduct.  More so, the fact that Defendant Moore's conduct was immediately preceded by making sexual epithets allows this Court to reasonably infer his conduct was callously motivated.  Id.  On the basis of these facts, it is reasonable to infer that Defendant Moore consciously acted with an evil intent or motive. Defendants' argument to strike punitive damages from Count I is denied.

Similarly, the facts alleged in Count III support possible punitive damages against Correction Officer Defendants for failing to intervene.  Because Plaintiff characterizes their idle, unwilling, and encouraging behavior as malicious, intentional and recklessly indifferent, it is reasonable to believe that Defendants acted callously or recklessly indifferent.  Compl. ¶43.  From these alleged facts, we must deny Defendants' motion to strike punitive damages from Count III.  See Martin v. Goodyear Tire & Rubber Co., No. 99-80, 1999 U.S. Dist. LEXIS 1318, 2-4 (E.D. Pa. 1999) (denying motion to

strike punitive damages where complaint characterized defendant's conduct, without more, as "wanton, reckless, and outrageous").

**V. CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss Count IV, alleging municipal and supervisor liability under 42 U.S.C. §1983, with prejudice.  Additionally, based on the lack of clarity discussed in Count II, the Court GRANTS IN PART Defendants' motion for a more definite statement with respect to discrimination and conspiracy causes of action. An appropriate order will follow.